# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| SHEILA ANN BELL, *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | Civil Action No. 12-757 |
| | ) | |
| v. | ) | Judge Cathy Bissoon |
| | ) | |
| FAIRMONT RAFFLES HOTEL | ) | |
| INTERNATIONAL, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## **MEMORANDUM ORDER**

Before this Court are three motions to dismiss. For the reasons stated below, the partial motion to dismiss filed by Defendants Jarden Corporation, Sunbeam Americas Holdings, LLC, and Sunbeam Products, Inc. (Doc. 33) will be denied, without prejudice. Defendant Fairmont Raffles Hotel International's ("FRHI") motion to dismiss pursuant to *forum non conveniens* (Doc. 36) also will be denied without prejudice. Finally, the motion to dismiss for lack of personal jurisdiction filed by Defendant FRHI (Doc. 38) will be denied without prejudice.

Plaintiffs allege that, on July 1, 2010, they made reservations at the Fairmont the Queen Elizabeth Hotel in Montreal, Canada. They did so by using Defendant FRHI's website, through which they paid for their room, and from which they received a confirmation email. They travelled from Pittsburgh, Pennsylvania, to Montreal, and checked in on or about July 26, 2010. While there, Plaintiff Sheila Bell attempted to use a clothes iron, which had been designed and manufactured by Defendants Tsann Kuen and Sunbeam under the "Sunbeam" mark, and apparently had been provided by the hotel. However, when she plugged in the iron in her room, "there was a popping sound and blue sparks and black smoke shot out from the electric wall

socket." (Doc. 1 ¶ 28). Plaintiff Sheila Bell then "was suddenly and violently struck with an electrical shock that entered through her right hand, traveled up her arm, across her chest, up through her neck, and into her left shoulder region of her body." Id. ¶ 29. She complains of various injuries stemming from this incident.

Plaintiff Sheila Bell is suing the Fairmont Defendants under the theories of premises liability and negligence. She also raises causes of action against Defendants Sunbeam and Tsann Kuen on the theories of strict products liability and breach of implied warranty. Finally, Plaintiff David Bell raises a claim for loss of consortium against all Defendants.

1. <u>Defendants Jarden Corporation, Sunbeam Americas Holdings, LLC, and Sunbeam Products, Inc.'s Motion to Dismiss Count III.</u>

Defendants Jarden Corporation, Sunbeam Americas Holdings, LLC, and Sunbeam Products, Inc. move to dismiss Count III of the complaint. This count raises a cause of action for strict products liability against these Defendants. They argue that the law of Canada properly governs this claim, and that "Canadian law does not recognize the theory of strict products liability." (Doc. 34 at 5). In support of the second contention these Defendants cite to a few American cases which, in turn, rely on authority from provinces in which Plaintiffs' alleged harm did not occur, and/or which predate that 1994 enactment of the Quebec Civil Code.[1]

Plaintiffs' response focuses almost exclusively on their belief that the law of Pennsylvania applies to this claim. As an afterthought, Plaintiffs mention Articles 1468 and

---

[1] One of the American cases on which these Defendants place a great deal of import is McLennan v. American Eurocopter Corp., "245 F.3d 305" (5th Cir. 2001). The undersigned notes that the correct citation for this case is 245 F.3d 403, 426 n.23. This Court trusts that Defendants, in the future, will check their citations to authority more thoroughly, as well as provide cites to specific pages that support their arguments.

1469 of the Quebec Civil Code as supporting claims for strict products liability in that province. They do not, however, cite to any authority interpreting this law.

A federal court sitting in diversity applies the conflict of law rules of the state in which it sits. Klaxon Co. v. Stentor Mfg. Co., 313 U.S. 487, 496-97 (1941). For choice of law determinations, Pennsylvania engages in a hybrid governmental interest analysis. See, e.g., Griffith v. United Air Lines, Inc., 203 A.2d 796, 805-06 (Pa. 1964). In Pennsylvania, a court first must determine whether there is an "actual or real conflict" between two potentially applicable laws. Hammersmith v. TIG Ins. Co., 480 F.3d 220, 230 (3d Cir. 2007).

> If there are relevant differences between the laws, then the court should examine the governmental policies underlying each law, and classify the conflict as a "true," "false," or an "unprovided-for" situation. A "deeper [choice of law] analysis" is necessary only if both jurisdictions' interests would be impaired by the application of the other's laws (i.e., there is a true conflict).

Id. Finally, if an actual or real conflict does exist, a court then should determine which jurisdiction has the greater interest in the application of its law. Id. at 231.

It is at the first point in this analysis where this Court is stymied by the parties' poor briefing. Defendants make sweeping statements concerning the law of Canada, but they fail to cite to any authority that is applicable to modern Quebec. While Plaintiffs cite to the Quebec Civil Code, which would seem to create some extra-contractual cause of action against these Defendants, they fail to provide any authority as to the *scienter* requirement of such an action. This Court, in its independent research, has come upon references to Article 1468 as creating a cause of action "approaching strict liability." See David S. Morritt & Sonia L Bjorkquist, Product Liability in Canada: Principles and Practice North of the Border, 27 Wm. Mitchell L.

Rev. 177, 192 (2000). However, such asides in law review articles are no substitution for actual legal authority, and hardly are dispositive.

In the end, it is not the job of this Court to provide the legal research necessary to support the parties' arguments if the parties are unwilling to do so themselves. As such, this motion will be denied, without prejudice to Defendants refiling at such time when the parties are willing and able to brief their arguments effectively, with citations to relevant authority, and in sufficient detail for this Court to make an informed decision on the merits. Additionally, to the extent that any authority necessary to support such a motion is published in French, the parties shall provide certified English translations.

2. <u>Defendant FRHI's Motion to Dismiss for *Forum Non Conveniens*</u>.

Defendant FRHI moves for the dismissal of this case pursuant to the doctrine of *forum non conveniens*. (Doc. 36).

Before delving into the merits of this Defendant's argument with respect to this motion, it is important to note that, strictly speaking, dismissal pursuant to *forum non conveniens* cannot be granted unless jurisdiction is proper in this Court. <u>Gulf Oil Corp. v. Gilbert</u>, 330 U.S. 501, 504 (1947). Be that as it may, the Supreme Court recently has held that such a motion invokes a non-merits threshold question, and that a district court need not address the issue of personal jurisdiction prior to ruling on a motion to dismiss for *forum non conveniens*. <u>Sinochem Intern Co. v. Malaysia Intern Shipping Corp.</u>, 549 U.S. 422, 432-33, 436 (2007).

Sitting at the threshold of any *forum non conveniens* analysis is the question of the existence of an alternate, adequate forum to hear the case. <u>Windt v. Qwest Commc'ns Int'l, Inc.</u>,

529 F.3d 183, 189 (3d Cir. 2008). This requirement generally is satisfied "when the defendant is 'amenable to process' in the other jurisdiction." Lacey v. Cessna Aircraft Co., 932 F.2d 170, 180 (3d Cir. 1991) (citing Piper Aircraft Co. v. Reyno, 454 U.S. 235, 254 n.22 (1981)). To that end, Defendant FRHI has provided this Court with an affidavit that is will accept service of process in Canada, submit to the jurisdiction of their courts, and waive the statute of limitations (with certain limitations). (Doc. 37-1 at 3-4).

Unfortunately, none of the other Defendants has filed such a stipulation, and no other Defendant appears to be a citizen of Canada. As such, Defendant FRHI has failed to demonstrate that Canada provides an adequate forum for all of the Defendants to this suit, and thus has not met its burden. See Dole Foods Co. v. Watts, 303 F.3d 1104, 1118-19 (9th Cir. 2002) (citing Alpine View Co. v. Atlas Copco, 205 F.3d 208, 221 (5th Cir. 2000)). Accordingly, this motion must be denied. Denial will be without prejudice because it is not clear that the refiling of such a motion necessarily would be futile, and for the reasons stated below.

3. <u>Defendant FRHI's Motion to Dismiss for Lack of Personal Jurisdiction</u>.

Once a defendant files a motion to dismiss pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure, "the plaintiff must 'prov[e] by affidavits or other competent evidence that jurisdiction is proper.'" Metcalfe v. Renaissance Marine, Inc., 566 F.3d 324, 330 (3d Cir. 2009), quoting Dayhoff Inc. v. H.J. Heinz Co., 86 F.3d 1287, 1302 (3d Cir. 1996). A plaintiff, however, need only establish "a prima facie case of personal jurisdiction," and is entitled to have the allegations set forth in the complaint taken as true and all factual disputes drawn in his or her favor. Miller Yacht Sales, Inc. v. Smith, 384 F.3d 93, 97 (3d Cir.2004). The complaint must

nevertheless contain "specific facts" rather than vague or conclusory assertions.  Marten v. Godwin, 499 F.3d 290, 298 (3d Cir. 2007).

The due process clause requires: (1) that the defendant have "minimum contacts" with the forum state; and (2) that the exercise of jurisdiction comports with "traditional notions of fair play and substantial justice."  Remick v. Manfredy, 238 F.3d 248, 255 (3d Cir. 2001) quoting International Shoe Co. v. Washington, 326 U.S. 310, 316 (1945).  "Minimum contacts must have a basis in 'some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.'"  Remick, 238 F.3d at 255, quoting Asahi Metal Indus. Co., Ltd. v. Superior Court of California, 480 U.S. 102, 109 (1987).

Pennsylvania's long arm statute extends personal jurisdiction "to the fullest extent allowed under the Constitution of the United States and may be based on the most minimum contact with this Commonwealth allowed under the Constitution of the United States." 42 Pa. Cons. Stat. § 5322(b).  In order for a foreign corporation to be subject to general jurisdiction in Pennsylvania, it must (1) be incorporated in Pennsylvania or licensed as a foreign corporation in Pennsylvania; consent to jurisdiction; or (3) carry a continuous and systematic part of its general business within the commonwealth.  42 Pa. Cons. Stat. § 5301(a)(2); Nationwide Contractor Audit Serv., Inc. v. Nat'l Compliance Mgmt. Servs., Inc. 622 F. Supp. 2d 276, 284 (W.D. Pa. 2008).

Personal jurisdiction may be invoked over a non-resident defendant on the basis of either general or specific jurisdiction. General jurisdiction is appropriate when the defendant's contacts with the forum are "continuous and systematic" and when the cause of action "arises from the

defendant's non-forum related activities." Vetrotex Certainteed Corp. v. Consol. Fiber Glass Prods. Co., 75 F.3d 147, 151 n.4 (3d Cir. 1995). It is important to note that, while personal jurisdiction is applied in two general categories, Plaintiffs limit their argument to the existence of general jurisdiction only. (Doc. 47 at 11).

"The threshold for establishing general jurisdiction is very high, and requires a showing of 'extensive and pervasive' facts demonstrating connections with the forum state." Nationwide, 622 F. Supp. 2d at 283-84 (internal quotes and citations omitted). It requires a level of contact that is significantly greater than mere minimum contacts with the forum and, instead, demands contacts which approximate physical presence. Id. at 284

Plaintiffs respond to Defendant FRHI's motion with four arguments: first, they assert that Defendant FRHI waived any objections to personal jurisdiction by timely filing its motion to dismiss pursuant to the doctrine of *forum non conveniens* (Doc. 36), and then untimely filing its Rule 12 motion to dismiss for lack of personal jurisdiction.[2] (Doc 47 at 7). Specifically, Plaintiffs believe that this later motion is prohibited by Rule 12(h) of the Federal Rules of Civil Procedure. This argument is easily disposed of. As stated above, the Supreme Court has held that a motion invoking *forum non conveniens* is a "non-merits" motion. Sinochem, 549 U.S. at 432-33. Courts have held that a *forum non conveniens* motion filed subsequent to a motion to dismiss for lack of personal jurisdiction does not violate Rule 12(h). Cf. Fifth & Walnut, Inc. v. Loew's, Inc., 76 F. Supp. 64, 67 (D.C.N.Y 1948) ("The objection of *forum non conveniens* is not a defense to improper venue, which must be asserted by preliminary motion or answer. It is

---

[2] Defendant FRHI's personal jurisdiction motion was filed four days after the deadline to respond to the complaint. (Docs. 24 and 38).

simply a motion which may be addressed to the discretion of the court at any time"). Accordingly, Rule 12(h) simply is inapplicable to this situation.

Second, Plaintiffs argue that Defendant FRHI has availed itself to the jurisdiction of this Court through the use of its website. (Doc. 47 at 10). In <u>Zippo Mfg. Co. v. Zippo Dot Com</u>, this Court set forth "a sliding scale" based on the interactivity of a website to determine whether that website created sufficient contact to establish specific jurisdiction. First, "[i]f the defendant enters into contracts with residents of a foreign jurisdiction that involve the knowing and repeated transmission of computer files over the Internet, personal jurisdiction is proper." 952 F. Supp. 1119, 1124 (W.D. Pa. 1997). A second category is occupied by interactive websites "where a user can exchange information with the host computer. In these cases, the exercise of jurisdiction is determined by examining the level of interactivity and commercial nature of the exchange of information that occurs on the Web site." <u>Id.</u> Finally, noninteractive websites can never provide the basis for the exercise of personal jurisdiction. <u>Id.</u>

This Court's analysis in <u>Zippo</u> has met with some measure of success, and even has been applied to issues of general jurisdiction. However, more recently, the application <u>Zippo</u> to such cases has been treated with disfavor. "In the wake of <u>Zippo</u>, courts have been reluctant to find general jurisdiction based on internet contacts only, even in those cases where the websites are highly interactive." <u>Nationwide</u>, 622 F. Supp. 2d at 292 and 292 n.7 (citing cases).

Here, Plaintiffs allege that they were able to book their hotel room and other activities related to their stay, and pay for the same, through Defendant FRHI's website. They provide evidence that this website will allow them to book rooms and services at a variety of Fairmont hotels, join a rewards program, and even apply for a job. However, interactive as this may be,

there simply is not enough here to find that Defendant FRHI, through its website alone, has established "contacts with this forum which approximate physical presence." <u>Nationwide</u>, 622 F. Supp. 2d at 2884. (citing <u>William Rosenstein & Sons Co. v. BBI Produce, Inc.</u>, 123 F. Supp. 2d 268, 274 (M. D. Pa. 2000) (internal quotation omitted)).

Third, Plaintiff asserts that Defendant FRHI's alleged management of the Fairmont Pittsburgh hotel subjects it to the jurisdiction of this Court. (Doc. 47 at 12). This is closely related to Plaintiffs' fourth argument – that all Fairmont Defendants are subject to the personal jurisdiction of this Court under an alter-ego theory. <u>Id.</u> at 15.

At the outset, based on the pleadings and motions filed in this case, it is difficult to determine exactly which Fairmont entity or entities Plaintiffs are suing. The caption of this case lists only one Fairmont Defendant – Defendant Fairmont Raffles Hotel International, or "FRHI" – which is then listed as doing business under multiple fictitious entities – "a/k/a FRHI t/d/b/a Fairmont Hotels and Resorts, Inc., t/d/b/a Fairmont Le Reine Elizabeth (Fairmont the Queen Elizabeth)." The body of the complaint, however, explicitly lists two Fairmont entities as Defendants – Fairmont Raffles Hotels International, "a/k/a FRHI," and Fairmont Hotels & Resorts, Inc., which is alleged to be a subsidiary of FRHI, and is alleged to own and operate the Fairmont the Queen Elizabeth Hotel. (Doc. 1 at 1-2). Plaintiffs refer to them throughout the complaint collectively as "FRHI." <u>Id.</u> ¶ 4.

The instant motion to dismiss was filed on behalf of Defendant "Fairmont Raffles Hotel International Inc. (improperly named as Fairmont Raffles Hotel International a/k/a FRHI t/d/b/a Fairmont Hotels and Resorts, Inc., t/d/b/a Fairmont Le Reine Elizabeth (Fairmont the Queen Elizabeth)" – implying, once again, the existence of only one entity. It is noteworthy, however,

that Defendant FRHI concedes the existence of "Fairmont Hotels & Resorts, Inc." as a separate entity. (Doc. 38 at 2 n.1). The record does not indicate, however, any attempt on the part of Defendant FRHI to correct the caption. Be that as it may, it appears from the docket that only one Fairmont entity – FRHI – has been served legal process in connection with this suit. (Doc. 24); see also (Docs. 8 – 11, 13 – 14).

In order to support these arguments, Plaintiffs provide a great deal of evidence that an entity named "Fairmont Hotels & Resorts" does a substantial amount of business in the United States. Their evidence is based largely on press releases, internet content, and excerpts from corporate filings. However, the terms "Fairmont," "FRHI," and "Fairmont Hotels & Resorts" appear to have been used almost interchangeably in this evidence, as well as by the parties in their pleadings and briefs. Defendant FRHI's reply is laconic in comparison, containing averments that that neither it, nor Fairmont Hotels & Resorts, do business in the United States, describing themselves merely as "affiliates," without providing any insight into Fairmont's corporate structure, and asserting that all corporate formalities have been observed.

At this point, it is unclear which Fairmont entities are referenced in Plaintiffs' evidence and what the relationship is between Fairmont Hotels & Resorts and Defendant FRHI. Indeed, the ambiguous terminology in the complaint and both parties' subsequent filings renders hopeless any attempt by this Court to draw a meaningful distinction between those entities. Furthermore, based on the complaint and the record, it is difficult to determine which Fairmont entities Plaintiffs are attempting to sue, and whether all of them have received service of process.

Even if this Court were persuaded by the arguments in Plaintiffs' response that some Canadian entity bearing the Fairmont moniker were doing business in the United States, or that

alter ego liability were appropriate, it simply cannot pierce the corporate veil of an entity without (1) knowing which entity is being affected; and (2) whether that entity has been served legal process. As such, it is impossible for this Court to make an informed ruling on the merits of this motion.

Because of the above identified deficiencies, the following Order is entered:

AND NOW, on this 27th day of March, 2013,

IT IS HEREBY ORDERED that the partial motion to dismiss filed by Defendants Jarden Corporation, Sunbeam Americas Holdings, LLC, and Sunbeam Products, Inc. (Doc. 33) is DENIED WITHOUT PREJUDICE.

IT IS FURTHER ORDERED that Defendant Fairmont Raffles Hotel International's motion to dismiss pursuant to *forum non conveniens* (Doc. 36) is DENIED WITHOUT PREJUDICE.

IT IS FURTHER ORDERED that the motion to dismiss for lack of personal jurisdiction filed by Defendant Fairmont Raffles Hotel International (Doc. 38) is DENIED WITHOUT PREJUDICE.

IT IS FURTHER ORDERED that, on or before April 10, 2013, Plaintiffs shall file an amended complaint clarifying which parties they are suing. Responses to the complaint shall be made on or before April 24, 2013. All responses shall be fully briefed, and shall correct the deficiencies identified above. The parties shall submit certified English translations of any Canadian authority that requires the same – including annotations to the Quebec Civil Code. If

any Fairmont Defendant chooses to file a motion to dismiss for lack of personal jurisdiction, it shall include a chart showing how the relevant parent and subsidiary corporations are related. Plaintiffs' responses to any dispositive motions shall be due May 8, 2013.

BY THE COURT:

s/Cathy Bissoon
CATHY BISSOON
UNITED STATES DISTRICT JUDGE

cc (via CM/ECF):

All counsel of record