# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| SHEILA ANN BELL, *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | Civil Action No. 12-757 |
| | ) | |
| v. | ) | Judge Cathy Bissoon |
| | ) | |
| FAIRMONT RAFFLES HOTEL | ) | |
| INTERNATIONAL, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM ORDER

### I. MEMORANDUM

For the reasons stated below, Defendant Fairmont Raffles Hotel International's Motion to Dismiss for Lack of Jurisdiction (Doc. 59) will be granted.

## BACKGROUND AND PROCEDURAL HISTORY

Plaintiffs' claims stem from an event that occurred on July 26, 2010, during their stay at the Fairmont the Queen Elizabeth Hotel in Montreal, Canada, when Plaintiff Sheila Bell was allegedly electrocuted while plugging in an iron. Accordingly, Plaintiffs filed a complaint (Doc. 1) on June 5, 2012, alleging several theories of liability against numerous parties, including claims of premises liability and negligence against "Fairmont Raffles Hotel International a/k/a FRHI t/d/b/a Fairmont Hotels and Resorts, Inc. t/d/b/a Fairmont Le Reine Elizabeth (Fairmont the Queen Elizabeth)."

Defendant Fairmont Raffles Hotel International ("FRHI") filed a Motion to Dismiss for Lack of Jurisdiction (Doc. 38) on August 10, 2012. This Court subsequently issued an Order (Doc. 54) denying the Motion to Dismiss without prejudice. The Court noted that while Plaintiffs' case caption listed only one Fairmont Defendant, the body of the complaint referenced

two separate Fairmont entities: Fairmont Raffles Hotel International and Fairmont Hotels & Resorts, Inc. Accordingly, the Court ordered Plaintiffs to file an amended complaint to clarify which Fairmont entities they were suing.

Plaintiffs filed their amended complaint (Doc. 56) on April 10, 2013. The amended complaint still lists the Fairmont defendant as "Fairmont Raffles Hotel International a/k/a FRHI t/d/b/a Fairmont Hotels and Resorts, Inc. t/d/b/a Fairmont Le Reine Elizabeth (Fairmont the Queen Elizabeth)." The amended complaint alleges that FRHI is a Canadian corporation that conducts business under the corporate name, Fairmont Hotels & Resorts, Inc. FRHI subsequently filed a new Motion to Dismiss for Lack of Personal Jurisdiction (Doc. 59), which is currently pending before this Court.

## ANALYSIS

Pennsylvania's long-arm statute provides for jurisdiction "to the fullest extent" permitted under the Due Process Clause of the Fourteenth Amendment. 42 Pa. Cons. Stat. § 5322(b). In order to satisfy due process, the defendant must have "certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945).

Personal jurisdiction may be invoked over a non-resident defendant on the basis of either general or specific jurisdiction. In order for a court to exercise general personal jurisdiction, which appears to be the only theory asserted by Plaintiffs here, the defendant must have "maintained systemic and continuous contacts with the forum state." Marten v. Godwin, 499 F.3d 290, 296 (3d Cir. 2007) (citing Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 414–15 & n. 8 (1984)). "The threshold for establishing general jurisdiction is very high, and requires a showing of extensive and pervasive facts demonstrating connections with

the forum state." Nationwide Contractor Audit Serv., Inc. v. Nat'l Compliance Mgmt. Servs., Inc., 622 F.Supp.2d 276, 283-84 (W.D. Pa. 2008) (internal citations omitted). This high threshold requires a level of contact with the forum that "approximate[s] physical presence." Id. at 284.

In order to survive a motion to dismiss for lack of personal jurisdiction, a plaintiff must prove "by affidavits or other competent evidence that jurisdiction is proper." Dayhoff Inc. v. H.J. Heinz Co., 86 F.3d 1287, 1302 (3d Cir. 1996). If the Court does not hold an evidentiary hearing on the issue of personal jurisdiction, "the plaintiff need only establish a prima facie case of personal jurisdiction and the plaintiff is entitled to have its allegations taken as true and all factual disputes drawn in its favor." Miller Yacht Sales, Inc. v. Smith, 384 F.3d 93, 97 (3d Cir. 2004). However, a plaintiff must base its prima facie showing of personal jurisdiction "on evidence of specific facts set out in the record." In re Enterprise Rent-A-Car Wage & Hour Employment Practices Litigation, 735 F.Supp.2d 277, 307 (W.D. Pa. 2010) (internal citations omitted). A plaintiff will meet its burden and present a prima facie case of jurisdiction by "establishing with reasonable particularity sufficient contacts between the defendant and the forum state." Mellon Bank (East) PSFS, Nat'l Ass'n v. Farino, 960 F.2d 1217, 1223 (3d Cir. 1992) (internal citations omitted).

Here, Plaintiffs rely on two theories as to why this Court has general jurisdiction over Defendant Fairmont Raffles Hotel International ("FRHI"): (1) FRHI has maintained continuous and systemic contacts with Pennsylvania through its alter-ego, Fairmont Hotels & Resorts, Inc. (U.S.); and (2) FRHI has created continuing relationships and obligations with Pennsylvania citizens through its interactive website. Plaintiffs also ask the Court for an opportunity to

conduct jurisdictional discovery if they are unable to meet their burden of establishing jurisdiction.

   A. **<u>Alter-Ego Theory</u>**

Plaintiffs first argue that this Court has general jurisdiction over FRHI through an alter-ego theory of personal jurisdiction. Specifically, Plaintiffs argue that FRHI is an alter-ego of its subsidiaries, including Fairmont Hotels & Resorts, Inc. (U.S.), which is registered to do business in Pennsylvania and operates the Fairmont Pittsburgh. Therefore, Plaintiffs urge that because this Court would have jurisdiction over Fairmont Hotels & Resorts, Inc. (U.S.), this Court also has jurisdiction over FRHI.

The alter-ego theory of liability provides that a parent can be responsible for the acts of a subsidiary if a plaintiff can show that the two corporations, in all aspects of the business, functioned as a single entity. See <u>Pearson v. Component Tech. Corp.</u>, 247 F.3d 471, 485 (3d Cir. 2001). The alter-ego theory can also be used to impute a subsidiary's contacts with a forum to the parent company for purposes of establishing personal jurisdiction. See <u>Lucas v. Gulf & Western Industries, Inc.</u>, 666 F.2d 800, 805-06 (3d Cir. 1981) (abrogated on other grounds by <u>EF Operating Corp. v. American Bldgs.</u>, 993 F.2d 1046, 1049 (3d Cir. 1993)); <u>In re Enterprise</u>, 735 F.Supp.2d at 317.

The alter-ego test for personal jurisdiction is "less stringent" than the test for piercing the corporate veil to impose liability. <u>In re Enterprise</u>, 735 F.Supp.2d at 319. However, to establish personal jurisdiction under the alter-ego theory, a plaintiff must show something more than simply a parent-subsidiary relationship. See <u>Lucas</u>, 666 F.2d at 805-06 ("[A] foreign corporation is not subject to the jurisdiction of the forum state merely because of its ownership of the shares of stock of a subsidiary doing business in the state."); <u>Action Mfg. Co., Inc. v. Simon Wrecking</u>

Co., 375 F.Supp.2d 411, 420 (E.D. Pa. 2005) ("[A] parent-subsidiary relationship is by itself an insufficient reason to pierce the corporate veil in the jurisdictional context."). Instead, "the alter-ego test looks to whether the degree of control exercised by the parent is greater than normally associated with common ownership and directorship and whether the parent controls the day-to-day operations of the subsidiary such that the subsidiary can be said to be a mere department of the parent." In re Enterprise, 735 F.Supp.2d at 319 (internal citations omitted).

Courts utilize a 10-factor test to evaluate the relationship between a parent and a subsidiary under the alter-ego theory, including whether:

> (1) the parent owns all or a significant majority of the subsidiary's stock;
>
> (2) commonality of officers or directors exist between the two corporations;
>
> (3) the corporate family possesses a unified marketing image, including common branding of products;
>
> (4) corporate insignias, trademarks, and logos are uniform across corporate boundaries;
>
> (5) corporate family members share employees;
>
> (6) the parent has integrated its sales and distribution systems with those of its subsidiaries;
>
> (7) the corporations exchange or share managerial or supervisory personnel;
>
> (8) the subsidiary performs business functions that would ordinarily be handled by a parent corporation;
>
> (9) the parent uses the subsidiary as a marketing division or as an exclusive distributor; and
>
> (10) the parent exercises control or provides instruction to the subsidiary's officers and directors.

Id. 318-19. "No one aspect of the relationship between two corporations unilaterally disposes of the analysis, and the court may consider any evidence bearing on the corporations' functional interrelationship." In re Chocolate Confectionary Antitrust Litigation, 674 F.Supp.2d 580, 598 (M.D. Pa. 2009).

Here, the corporate structure of the Fairmont entities is far from clear. In support of its motion to dismiss, Defendant FRHI has provided the Court with an affidavit from its Vice President and Associate General Counsel, Barbara Kilner, as well as two diagrams depicting its corporate structure. See Def.'s Br. (Doc. 60). FRHI's diagrams show that at the time of the alleged injury in July 2010, Fairmont Hotels & Resorts, Inc. (Canada) was the Canadian parent company with two wholly-owned Canadian subsidiaries: (1) Defendant FRHI; and (2) Fairmont Hotels, Inc. (Canada). The diagram indicates that the second subsidiary, Fairmont Hotels, Inc. (Canada), is the Canadian subsidiary that managed the Fairmont the Queen Elizabeth, and this entity also had its own wholly-owned subsidiary: Fairmont Hotels & Resorts, Inc. (U.S.), which is the Delaware Corporation that managed the Fairmont Pittsburgh.[1] Def.'s Br., Ex. B (Doc. 60-1).

FRHI asserts that it is a wholly-owned direct subsidiary of Fairmont Hotels & Resorts Inc. (Canada), and it is a service company that neither owns nor operates hotels and "has absolutely no hand in the ownership or operation of either Fairmont the Queen Elizabeth or any United States based hotels or corporations." Def.'s Br. (Doc. 60) at 6. FRHI also denies that is

---

[1] Defendant's second diagram illustrates the corporate structure in April 2013, after a corporate restructuring occurred. This diagram indicates that Fairmont Hotels, Inc. (Canada), who manages the Fairmont The Elizabeth Queen, is now the Canadian parent company with two wholly-owned subsidiaries: (1) Defendant FRHI and (2) FHI Finance (U.S.). The second subsidiary, FHI Finance (U.S.), is a Delaware corporation with its own subsidiary: Fairmont Hotels & Resorts (U.S.) Inc., which is the entity that manages the Fairmont Pittsburgh. Def.'s Br., Ex. C (Doc. 60-1).

has any U.S. subsidiaries or that it is a subsidiary of any U.S. corporation, asserting there "is absolutely no relationship between the named Defendant and any United States entity that would subject it to jurisdiction." Id. at 8.

However, in response to the motion to dismiss, Plaintiffs have provided the Court with evidence to suggest that FRHI has a slightly different corporate structure than they represent. Specifically, Plaintiffs provided the Court with an excerpt from a privacy policy on a website, www.frhi.com, which states: "Fairmont Raffles Hotels International, Inc. ('FRHI') is the operator of this website and is the parent company of the companies that own, operate or manage hotels under the 'Fairmont', 'Raffles' and 'Swissotel' names or brands."[2] Pl.'s Br. in Opp., Ex. 1 (Doc. 64-1). The Court will resolve this factual dispute in Plaintiffs' favor and accept as true, for the purposes of this motion, Plaintiffs' assertion that FRHI is the parent company of the entities that operate the Fairmont Hotels. See Miller Yacht Sales, Inc., 384 F.3d at 97.

Plaintiffs also have provided the Court with various pieces of evidence, all in the form of website excerpts, in an attempt to show that FRHI has contacts with Pennsylvania through its alter-egos, Fairmont Hotels & Resorts Inc. (U.S.) and Fairmont Hotels & Resorts Inc. (Canada). Plaintiffs use these website excerpts to analyze the relationship between Defendant FRHI and the other Fairmont entities under the 10-factor test described above.

First, Plaintiffs begin with the second factor, commonality of officers or directors. Plaintiffs provided the Court with a number of website excerpts and articles that show four officers or directors of FRHI have held various roles with different Fairmont entities. See Pl.'s Br. in Opp., Ex. 2 (Docs. 64-2); Ex. 3 (Doc. 64-3). For the third factor, the corporate family possesses a unified marketing image, Plaintiffs assert that all of the Fairmont entities use the

---

[2] Defendant FRHI claims that this is a factual error on the website and denies that FRHI is a parent company of any Fairmont entity. Def.'s Reply Br. (Doc. 66) at 2.

Fairmont logo and brand, regardless of which subsidiary is the owner or manager. Pl.'s Br. in Opp. (Doc. 64) at 8. Plaintiffs point to a website showing the mark "Fairmont Hotels & Resorts" is trademarked by Fairmont Hotels & Resorts (U.S.), Inc. Pl.'s Br. in Opp., Ex. 4 (Doc. 64-4). Plaintiffs assert that the fourth factor, corporate insignias, trademarks, and logos are uniform across corporate boundaries, is met for the same reason, and also point to a section labeled "Intellectual Property" in an unidentified SEC document that states: "FHR has a significant number of trade names, trademarks, and service marks, including those relating to Fairmont…"[3] Pl.'s Br. in Opp., Ex. 5 (Doc. 64-5). However, neither the website excerpt nor the SEC document reference FRHI, and therefore this evidence fails to provide insight on the relationship between FRHI and the other Fairmont entities.

For the fifth factor, corporate family members share employees, Plaintiffs point to the sharing of officers and directors described above, as well as a LinkedIn profile from a tax consultant of FRHI, which indicates that he prepares inter-company entries and reconciliations. Pl.'s Br. in Opp., Ex. 6 (Doc. 64-6). Plaintiffs also point to a website that allows employees to rate their employment experiences, and urge that because an employee of the Fairmont Pittsburgh left a comment under the page designed for reviews of FRHI, an employee of the Fairmont Pittsburgh must also be an employee of FRHI. Pl.'s Br. in Opp., Ex. 7 (Doc. 64-7).

Plaintiffs argue that the sixth factor, the parent has integrated its sales and distribution systems with those of its subsidiaries, is met because "Fairmont utilizes its interactive website to promote and advertise all of its hotels" and "uses the information and data obtained by its international website to direct its marketing for all of its hotels." Pl's Br. in Opp. (Doc. 64) at 9.

---

[3] Plaintiffs do not identify in their brief what this document is or which Fairmont entity filed the document. For purposes of this analysis, the Court will assume that "FHR" stands for "Fairmont Hotels & Resorts, Inc." rather than Defendant FRHI.

Plaintiffs again point to the unidentified SEC document to support their assertions, which only discusses the website of "FHR", and does not mention Defendant FRHI.

With regard to the seventh factor, corporations exchange and share managerial or supervisory personnel, Plaintiffs utilize various website excerpts to show that at least four employees of a Fairmont entity have held various positions in different Fairmont Hotels or entities. However, an examination of Plaintiffs' evidence reveals that three of these four employees simply transferred management positions between different Fairmont hotels, not between FRHI and another Fairmont entity. See Pl.'s Br. in Opp., Ex. 9 (Doc. 64-9) at 1, 4-8. The only evidence that illustrates any management movement between FRHI and a different Fairmont entity, is a LinkenIn profile that indicates the current "Executive Director of Hotel Management Agreement Compliance" at FRHI formerly held the position of "Regional Financial Controller" for several different Fairmont hotels. Id. at 2-3.

For the eighth factor, the subsidiary performs business functions that would ordinarily be handled by a parent corporation, Plaintiffs assert "[i]t is believed that the parent corporation enters into the management agreements and the subsidiaries perform the required duties of Fairmont Raffles Hotels International under the agreements." Pl.'s Br. in Opp. (Doc. 64) at 10-11. Plaintiffs also assert that the ninth factor, the parent uses the subsidiary as a marketing division or as an exclusive distributor, is met by "the advertising of each hotel's amenities and awards as a marketing tool for all of its hotels and the use by all hotels of the Fairmont logo and brand." Id. at 11.

Plaintiffs also argue that the tenth factor, the parent corporation exercises control, is met because the officers and directors of the subsidiaries are the same officers and directors of the parent, and "the parent corporation hires, trains, and determines the salaries of all staff at the

Fairmont hotels." Id. Plaintiffs again cite to numerous excerpts from the unidentified SEC document as support for their assertions. Finally, Plaintiffs point to a transcript from an unrelated court proceeding, where an FRHI representative testified that FRHI is the parent company that manages Fairmont Hotels and Resorts. When the FRHI representative was asked about the Fairmont hotel locations, the representative stated that "We actually operate the Plaza New York and the Savoy in London." Pl.'s Br. in Opp., Ex. 13 (Doc. 64-13).

Taking all of Plaintiffs' allegations to be true and resolving all factual disputes in Plaintiffs' favor, the Court finds that Plaintiffs have not put forth "affidavits or other competent evidence" to establish that jurisdiction is proper under the alter-ego theory. Dayhoff Inc., 86 F.3d at 1302. Plaintiffs' evidence establishes, at most, that FRHI is the parent company of Fairmont Hotels and Resorts, Inc., who manages the Fairmont Pittsburgh, and that some officers, directors, and employees, may have held positions at both FRHI and another Fairmont entity. The evidence lacks any indication that the relationship between FRHI and the other Fairmont entities "is greater than normally associated with common ownership and directorship" or that FRHI "controls the day-to-day operations of the subsidiary such that the subsidiary can be said to be a mere department" of FRHI. In re Enterprise, 735 F.Supp.2d. at 319 (internal citations omitted).

To the contrary, some of Plaintiffs' evidence supports FRHI's assertion that it is simply a service company that has no role in the operation of the Fairmont hotels. For example, the SEC document frequently cited by Plaintiffs discusses in detail how "FHR" manages different aspects of the Fairmont hotels, without any reference to FRHI. See, e.g., Pl.'s Br. in Opp., Ex. 5 (Doc. 64-5); Ex. 8 (Doc. 64-8); Ex. 11 (Doc. 64-11). Further, two of Plaintiffs' website excerpts specifically identify FRHI and Fairmont Hotels & Resorts Inc. as separate entities. See Pl.'s Br. in Opp., Ex. 2 (Doc. 64-2) at 14 (containing separate "about" sections for FRHI and Fairmont

Hotels & Resorts in the article); Pl.'s Br. in Opp., Ex. 7 (Doc. 64-7) at 4 (noting on the website that Fairmont Hotels & Resorts operates the hotels and indicating that FRHI is the parent company).

A parent-subsidiary relationship with shared officers and directors are not alone enough to impute Fairmont Hotel & Resort Inc.'s contacts with this forum to Defendant FRHI under an alter-ego theory. See Arch v. Am. Tobacco Co., Inc., 984 F.Supp. 830, 838 (E.D. Pa. 1997) ("[O]verlapping directors and officers do not alone establish an alter ego relationship."); Zombeck v. Amada Co. Ltd., 2007 WL 4105231, at *8 (W.D. Pa. Nov. 15, 2007) ("One hundred percent stock ownership and commonality of officers and directors are not alone sufficient to establish an alter ego relationship between two corporations."). Therefore, the Court finds that Plaintiffs have failed to make a prima facie case of jurisdiction under this theory. See In re Enterprise, 735 F.Supp.2d at 325; Zombeck, 2007 WL 4105231, at *9.

### B. Interactive Website

Plaintiffs next argue that FRHI maintains continuous and systemic contacts with Pennsylvania citizens through its interactive website, which allows users to search for employment opportunities, search and reserve hotel rooms and schedule and pay for banquet facilities. Plaintiffs further argue that FRHI's website directly targets Pennsylvania residents because it advertises the Fairmont Pittsburgh as a place to hold wedding receptions and corporate events. Pl.'s Br. in Opp. (Doc. 64) at 14-16. However, Plaintiffs made an identical argument in its Brief opposing Defendant's First Motion to Dismiss for Lack of Jurisdiction. Compare Pl.'s Br. in Opp. (Doc. 47) at 11-13, with Pl.'s Br. in Opp. (Doc. 64) at 14-16. The Court, in its March 27, 2013 Order, already rejected this identical argument. See Order (Doc. 54) at 8-9.

Therefore, for the same reasons put forth in that Order, FRHI's website alone does subject it to personal jurisdiction in this Court.[4]

C. **Discovery Request**

Plaintiffs request that if they are unable to meet their burden to establish personal jurisdiction that they be given an opportunity to conduct jurisdictional discovery. Pl.'s Br. in Opp. (Doc. 64) at 16. A plaintiff's right to conduct jurisdictional discovery should be sustained "[i]f a plaintiff presents factual allegations that suggest with reasonable particularity the possible existence of the requisite contacts between the party and the forum state." Toys "R" Us, Inc. v. Step Two, S.A., 318 F.3d 446, 456 (3d Cir. 2003) (internal citations omitted). However, a trial court "has discretion to refuse to grant jurisdiction discovery" and "may deny jurisdictional discovery where a plaintiff has failed to meet its burden of making out a threshold prima facie case of personal jurisdiction." Arch, 984 F.Supp. at 841. Here, because Plaintiffs have failed to make a prima facie case of jurisdiction over FRHI, and also have failed to show that additional discovery would reveal that personal jurisdiction may exist, the Court will not grant Plaintiffs with the opportunity to conduct discovery on the issue of jurisdiction.

**CONCLUSION**

Plaintiffs have failed to meet their burden of establishing a prima facie case of jurisdiction over Defendant FRHI. Plaintiffs have not shown that FRHI is an alter-ego of the Fairmont entity that operates the Fairmont Pittsburgh. Nor does FRHI's interactive website establish the systemic and continuous contacts required for general jurisdiction. Because

---

[4] Plaintiffs argue that the combination of contacts from the interactive website and from FRHI's alter-ego corporation is enough to establish general jurisdiction. Pl.'s Br. in Opp. (Doc. 64) at 16. However, as described above, Plaintiffs do not prevail under their alter-ego theory and therefore the website is the only remaining basis put forth by Plaintiffs to establish personal jurisdiction over FRHI.

Plaintiffs have failed to make a prima facie showing of personal jurisdiction, the Court denies Plaintiffs' request to conduct jurisdictional discovery.

## II. ORDER

Consistent with the foregoing, Defendant Fairmont Raffles Hotel International's Motion to Dismiss for Lack of Personal Jurisdiction (Doc. 59) is **GRANTED**.

IT IS SO ORDERED.


November 25, 2013                     s\Cathy Bissoon
                                      Cathy Bissoon
                                      United States District Judge

cc (via ECF email notification):

All Counsel of Record